UNITED STATES of America, Appellee,

v.

Jose Ramon MONTOYA, Defendant–
Appellant.

No. 1366, Docket 95–1400.

United States Court of Appeals,
Second Circuit.

Argued April 9, 1996.

Decided June 21, 1996.

Robert E. Rice, Assistant United States Attorney, New York City (Mary Jo White, United States Attorney for the Southern District of New York, Ira M. Feinberg, Assistant United States Attorney, New York City, on the brief), for Appellee.

Gary G. Becker, New York City (Lefcourt & Dratel, New York City, on the brief), for Defendant–Appellant.

Before: KEARSE, ALTIMARI, and JACOBS, Circuit Judges.

PER CURIAM.

Defendant Jose Ramon Montoya appeals from a judgment of conviction entered in the United States District Court for the Southern District of New York, following a jury trial before then-Judge Kenneth Conboy, at which Montoya was found guilty of conspiracy to distribute crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 (1988 & Supp. IV 1992). Judge Allen G. Schwartz, to whom Montoya's case was reassigned and who presided over the trial of Montoya's coconspirators, sentenced Montoya principally to 262 months' imprisonment,

to be followed by five years' supervised release. On appeal, Montoya contends that he is entitled to be resentenced on the principal ground that § 841(b)(1)(A) and the Federal Sentencing Guidelines ("Guidelines") provision under which he was sentenced are ambiguous and permit arbitrary sentencing in violation of the Due Process Clause of the Constitution. For the reasons that follow, we disagree and affirm the judgment.

This prosecution focused on drug distribution activities in the Bronx, New York, from April 1990 through June 1992. There is no present dispute that during 1992 Montoya worked as a manager of a drug distribution site where he received, stored, and distributed to middlemen vials containing cocaine base. Coconspirator witnesses testified that the organization distributed "crack." Montoya stipulated that a government chemist, if called as a witness, would testify that drugs seized from a location used by Montoya's organization were "a mixture and substance containing cocaine base which is commonly known as crack."

■ At sentencing, the district court determined that the quantity of cocaine base or crack for which Montoya was responsible totaled approximately 920 grams. As a result, Montoya was subject to a statutory minimum prison term of 10 years, *see* 21 U.S.C. § 841(b)(1)(A); his base offense level under the Guidelines was 36, *see* Guidelines § 2D1.1; and his ultimate Guidelines imprisonment range was 262–327 months. Montoya contended unsuccessfully in the district court, and pursues the contention here, that he should have been held responsible for 920 grams of cocaine, not cocaine base. Application of the provisions governing offenses involving cocaine, instead of those involving cocaine base, would have resulted in a statutory minimum prison term of five years, *see* 21 U.S.C. § 841(b)(1)(B), and a Guidelines range of 87–108 months. We reject his contention. Given the lack of any significant dispute that the substance introduced against Montoya was crack, we see no flaw in the calculation of Montoya's sentence.

Section 841(b)(1)(A) provides that a defendant is to receive a minimum sentence of 10 years' imprisonment for conviction of an offense involving

> (ii) 5 kilograms .or more of a mixture or substance containing a detectable amount of—
>
> . . . .
>
> > (II) cocaine, its salts, optical and geometric isomers, and salts of isomers; [or]
> >
> > . . . .
>
> (iii) 50 grams or more of a mixture or substance described in clause (ii) which contains cocaine base. . . .

21 U.S.C. § 841(b)(1)(A). Montoya argues that these provisions are ambiguous because cocaine (referred to in subsection (ii)(II)) does not just "contain[ ]" cocaine base (as referred to in subsection (iii)); he argues that it *is* cocaine base. He contends that cocaine and cocaine base contain the same elements; that cocaine base is a term of art by which scientists refer to cocaine; and that this Court has interpreted cocaine base "according to its scientific definition," *United States v. Palacio,* 4 F.3d 150, 153 (2d Cir. 1993) (describing *United States v. Jackson,* 968 F.2d 158, 161 (2d Cir.), *cert. denied,* 506 U.S. 1024, 113 S.Ct. 664, 121 L.Ed.2d 589 (1992)), *cert. denied,* —— U.S. ——, 114 S.Ct. 1194, 127 L.Ed.2d 543 (1994). He contends, therefore, that a defendant convicted of an offense involving cocaine base could be viewed as falling under either subsection (ii)(II), which is not triggered unless the drug quantity was at least five kilograms, or subsection (iii), which is triggered when the quantity was as little as 50 grams; that the choice as to which subsection will be applied to a given defendant is arbitrary; and that the statutory scheme thus constitutes a denial of due process. Whether or not there is complete clarity as to the interplay among statutory structure, sentence structure, and molecular structure, we conclude that Montoya is not entitled to be resentenced because his sentence was not affected by the statutory provisions for minimum terms of imprisonment.

Both the 1991 Guidelines, which were in effect at the time of Montoya's offense, and the 1994 Guidelines, which were in effect at the time of his sentencing, clearly distinguished between cocaine and cocaine base.

The Drug Quantity Table, which specifies the quantities of various types of narcotics that trigger a given base offense level, set forth separately as to each offense level the requisite quantity of cocaine and the requisite quantity of cocaine base. *See* Guidelines § 2D1.1(c). The Guidelines contained no reference to either substance's containing the other, and "[c]ocaine" plainly referred to any form of cocaine other than cocaine base. Further, the Drug Equivalency Tables, which specify the quantities of marijuana to which one gram of various types of narcotics is equivalent, gave one equivalency figure for "Cocaine" and specified a different figure for the substance they designated as "Cocaine Base ('Crack')." In light of these distinctions, we see no ambiguity in the differing Guidelines ranges for cocaine offenses and cocaine-base offenses.

■ As indicated above, the imprisonment range prescribed by the Guidelines for Montoya was 262–327 months. Guidelines provisions are affected by statutory minimum sentence provisions only where the imprisonment according to the Guidelines Sentencing Table could be less than the pertinent minimum. *See generally United States v. Larotonda*, 927 F.2d 697, 698 (2d Cir.1991) (per curiam); *United States v. Gonzalez*, 922 F.2d 1044, 1050–51 (2d Cir.), *cert. denied*, 502 U.S. 1014, 112 S.Ct. 660, 116 L.Ed.2d 751 (1991); *see also* 18 U.S.C. § 3553(f) (1994). Here, the Guidelines range for Montoya prescribed a sentence of more than 21 years; thus any question as to the clarity of the statutory provision for imposition of a minimum 10–year term is immaterial. Since we see no ambiguity in the Guidelines provisions, we reject Montoya's due process challenge to his sentence.

■ We note also that since November 1993 the Drug Quantity Table section has included the note that

"[c]ocaine base," for the purposes of this guideline, means "crack." "Crack" is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and

usually appearing in a lumpy, rocklike form.

Guidelines § 2D1.1(c) (eff. Nov. 1, 1993). Although Montoya contends that this provision, if applied to him, would violate the *Ex Post Facto* Clause of the Constitution, his contention is wide of the mark, for even prior to the amendment the distinction made in the Guidelines between cocaine and cocaine base was clear. Further, the express purpose of the 1993 amendment was to reject the interpretation of cases such as *United States v. Jackson*, 968 F.2d at 162, which had ruled that cocaine base included more than crack. *See* Guidelines App. C, Amend. 487 (eff. Nov. 1, 1993) ("Under this amendment, forms of cocaine base other than crack (*e.g.*, coca paste, an intermediate step in the processing of coca leaves into cocaine hydrochloride, scientifically is a base form of cocaine, but it is not crack) will be treated as cocaine."). Thus, the amendment did not expand the reach of the term cocaine base as used in § 2D1.1(c), but rather confined it. *See generally United States v. Palacio*, 4 F.3d at 154. Finally, even our interpretation in *United States v. Jackson* left no doubt that the Guidelines' term cocaine base included *at least* crack. Thus, neither *Jackson*'s expansive interpretation of cocaine base nor the 1993 amendment's confinement of that term helps Montoya, since he stipulated that the government's expert would testify that the substance introduced was crack.

We have considered all of Montoya's contentions on this appeal and have found in them no basis for reversal. The judgment of conviction is affirmed.