BEA, Circuit Judge,
concurring in part and dissenting in part:
I agree with Judge Kleinfeld’s description of Edwards: he “is a big time thief.” United States v. Edwards, 158 Fed.Appx. 930, 931 (9th Cir.2005) (Kleinfeld, J., dissenting).[1] Edwards was convicted of bank fraud in an Arizona state court after he stole more than $3 million. While Edwards was on probation imposed as part of his sentence for the Arizona fraud conviction, he lied to another bank to obtain a new bank loan — he did not tell the new bank he had been convicted of defrauding the earlier bank. He then filed for bankruptcy to avoid paying his new, fraudulently procured loan, but he knowingly did not fully disclose all of his assets and liabilities to the bankruptcy court, whose aid he had sought to avoid his loan obligations. When the government finally caught up with him and brought the fraud charges in this case, he pleaded guilty to bank fraud and to bankruptcy fraud. The intended and actual losses from Edwards’s bank fraud and bankruptcy fraud totaled more than $500,000. The advisory Guidelines sentencing range was twenty-seven to thirty-three months’ imprisonment, yet the sentence today approved by the majority will result in Edwards serving no time in prison. The district court sentenced Edwards to sixty months’ probation — with seven months served under house arrest — and ordered him to pay just over $100,000 in restitution. The majority concludes this sentence is substantively reasonable. But like Judge Kleinfeld, “I cannot see how a sentence anything like the one imposed could be reasonable under 18 U.S.C. § 3553(a)(2).”[2] Id. Therefore, I respeet- *1019 fully dissent from the majority’s holding that Edwards’s below-Guidelines sentence is substantively reasonable.[3]
The majority’s holding that Edwards’s sentence is substantively reasonable evidences an ever-widening split between our circuit’s analysis of below-Guidelines sentences in the context of white collar crime and that of our sister circuits. Unlike many of our sister circuits,[4] our circuit has not held that a sentence imposed on a defendant who was convicted of a white collar crime is unreasonably lenient since the Supreme Court decided Gall v. United, States, 552 U.S. 38, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007).[5] That is not for lack of opportunity. See, e.g., United States v. Whitehead, 532 F.3d 991, 999-1000 (9th Cir.2008) (Bybee, J., dissenting) (explaining that a sentence of probation, restitution, and community service was unreasonably lenient where the defendant stole over $1 million and the Guidelines range was forty-one to fifty-one months’ imprisonment); United States v. Ruff, 535 F.3d 999, 1004-07 (9th Cir.2008) (Gould, J„ dissenting) (explaining that a sentence of one day’s imprisonment and three years of supervised release was unreasonably lenient where the defendant stole over $600,000 and the Guidelines range was thirty to thirty-seven months’ imprisonment). Edwards’s sentence presents us with another such opportunity.
The majority’s holding also evidences an intra-Circuit conflict that continues to develop. In United States v. Amezcua-Vasquez, 567 F.3d 1050 (9th Cir.2009), we held that a within-Gguidelines sentence was unduly harsh, hence substantively unreasonable. But, with one exception,[6] we have consistently refused to hold that sentences significantly below the advisory Guidelines range are unduly lenient, hence substantively unreasonable. See Whitehead, 532 F.3d at 993; Ruff, 535 F.3d at 1003. It is difficult to reconcile the holding of Amezcua-Vasquez with the holdings of Whitehead and Ruff, unless we adopt a rule that what a panel considers to be a harsh sentence can be substantively unreasonable, but not so a lenient sentence; in *1020 other words, that “substantive unreasona-bility” in the Ninth Circuit is a one-way street that is posted to lead sentences only downwards. But as Ressam demonstrates, there is no such rule. 2010 WL 347962, at *33.
I agree with the majority that we must review the sentence imposed by the district court “under a deferential abuse-of-discretion standard.” Gall, 552 U.S. at 41, 128 S.Ct. 586. However, nothing in Gall “suggests that the Supreme Court has taken the courts of appeals out of the business of reviewing sentences.” Whitehead, 532 F.3d at 995 (Bybee, J., dissenting); see also Rita v. United States, 551 U.S. 338, 354, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007) (“In sentencing, as in other areas, district judges at times make mistakes that are substantive. At times, they will impose sentences that are unreasonable. Circuit courts exist to correct such mistakes when they occur”). We must review sentences for significant procedural error and for substantive reasonableness. Gall, 552 U.S. at 51, 128 S.Ct. 586. And when we review the reasonableness of a below-Guidelines sentence, we may consider the extent to which the sentence imposed deviates from the Guidelines range. Id. at 47, 128 S.Ct. 586. As the Supreme Court explained, “it [is] uncontroversial that a major departure should be supported by a more significant justification than a minor one.” Id. at 50, 128 S.Ct. 586. The district court “must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.” Id. Thus, even after Gall, it is clear that “[t]he abuse of discretion standard of review is not a rubber stamp of all sentencing decisions made by a district court.” Ruff, 535 F.3d at 1005 (Gould, J., dissenting).
We have recently clarified the abuse of discretion standard in this circuit. See United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir.2009) (en banc). We now apply a two-part test to determine whether the district court abused its discretion. Id. Under the first step, we “determine de novo whether the trial court identified the correct legal rule to apply to the relief requested.” Id. “If the trial court identified the correct legal rule, we move to the second step ... to determine whether the trial court’s application of the correct legal standard was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record.” Id. (internal quotation marks and citation omitted).
Here, the district court identified and applied the correct legal rule. The district court correctly calculated the advisory Guidelines range — twenty-seven to thirty-three months’ imprisonment — and then considered the 18 U.S.C. § 3553(a) sentencing factors to determine whether to impose a sentence outside the Guidelines range. See Gall, 552 U.S. at 49-50. But the district court’s view that the purpose of general deterrence is limited to the effect that deterrence could have only within the defendant’s community — here, the community where Edwards lived in Montana at the time he committed bank fraud and bankruptcy fraud and the community where he now lives in Oklahoma— is simply an incorrect application of 18 U.S.C. § 3553(a)(2)(B). In this day and age of internet and broadband communications, the district court should have considered how others, on a nationwide level, would have been deterred, or not, by a conviction followed by only a probationary sentence.
Further, the district court’s imposition of a sentence of sixty months’ probation and $100,000 in restitution that included no incarceration was (1) illogical as to the effect a sentence without incarceration *1021 would have on Edwards’s community, and (2) without support in inferences that may be drawn from the facts in the record. Thus, the district court abused its discretion.
The sentencing court must consider “the need for the sentence imposed ... to afford adequate deterrence to criminal conduct.” 18 U.S.C. § 3553(a)(2)(B). Deterrence encompasses both general deterrence and specific deterrence. However, specific deterrence is also considered under § 3553(a)(2)(C), which requires the district court to consider “the need for the sentence imposed ... to protect the public from further crimes of the defendant.” Id. § 3553(a)(2)(C). Thus, when a district court considers § 3553(a)(2)(B), it should focus on whether a sentence will provide general deterrence. See United States v. Martin, 455 F.3d 1227, 1240 (11th Cir. 2006) (explaining that § 3553(a)(2)(B) speaks to general deterrence while § 3553(a)(2)(C) speaks to specific deterrence).
General deterrence is effective in the context of white collar crime such as Edwards’s bank fraud and bankruptcy fraud. “Defendants in white collar crimes often calculate the financial gain and risk of loss, and white collar crime therefore can be affected and reduced with serious punishment.” Martin, 455 F.3d at 1240 (holding that a sentence of seven days’ imprisonment was substantively unreasonable where the defendant participated in a securities fraud conspiracy that caused more than $1 billion in losses). White collar crime, especially bank fraud, usually requires a well-schooled, intelligent criminal, capable of gauging the upside of how others will be gulled by his well-honed fables. This ability to foresee extends also to the possible downside of his fraud: apprehension, conviction, and punishment. Further, bank fraud, unlike an assault in a tavern or even domestic abuse, tends to be a planned, deliberate crime, which allows plenty of time for reflection, calculation of the odds of success or failure, and the ultimate decision.
It is precisely at this point — when the thief of above-average education and wit is deciding whether to do the deed — that reflection on probable prison time — general deterrence — can have an effect. Like the taxpayer who decides not to defraud the fisc for fear of wearing an orange jumpsuit for a long time because he knows that the government goes after everyone — even A1 Capone — for tax fraud, the contemplating bank fraud thief should be forced to consider a message other than: “Oh, if you get caught and you put on a repentant’s suit, you’ll probably get probation and a restitution order of 20% of what you stole. And about that restitution order, don’t worry too much because, in America, there are no debtor’s prisons. So if you don’t pay, you won’t do time.”
Here, the district court acknowledged that general deterrence is effective in the context of white collar crime but still imposed a non-prison sentence. The district court stated:
General deterrence, I don’t think it has a significant factor in a case like this, but I will agree with[the government] that in white collar crime cases general deterrence is more likely to occur than in something like the kinds of drug cases or gun cases or pornography cases that we see frequently in this court.
This finding — that general deterrence was not a significant factor in this case — is clearly erroneous and cannot justify Edwards’s sentence.
The district court assumed the only general deterrence effect would be in the communities where Edwards had lived and that the people in those communities had already been deterred based on their *1022 awareness of Edwards’s conviction.[7] But that is an unnecessarily restrictive view of general deterrence. Why should general deterrence be considered only in terms of the defendant’s community? Section 3553(a)(2)(B) speaks to deterring “criminal conduct”; it does not suggest such deterrence should be limited to the defendant’s own community. For sure, Edwards’s present sentence will not deter criminal conduct. It will ineentivize it. The sentence sends the message that a reasonable sentence for white collar criminals is probation and restitution. We risk allowing this sentence to become “a baseline against which we measure other sentences.” Whitehead, 532 F.3d at 999 (Bybee, J., dissenting).
The majority concludes that “[t]he district court explicitly considered, weighed and factored into its sentence the important goal of deterrence.” Maj. Op. at 1016-17. The majority points out that “[t]he district court concluded that the sentence of probation and the fact of a felony conviction would serve to deter Edwards from future wrongdoing.” Id. at 1016. Even assuming the important goal of specific deterrence is reflected in Edwards’s sentence, I fail to see how the equally important goal of general deterrence is reflected in Edwards’s sentence other than to claim people in Edwards’s communities would be deterred by knowledge of his conviction. How does knowledge of Edwards’s conviction provide general deterrence? Edwards’s sentence conveys the message that white collar criminals can steal and not do time. The district court did not explain why some term of imprisonment was not necessary. It is not enough to state that general deterrence does not matter in this case.
I do not ignore the fact that Edwards was ordered to pay more than $100,000 in restitution. I agree with both the district court and the majority that a restitution order does create general deterrence. However, without some term of imprisonment, restitution is simply inadequate to deter the type of conduct in which Edwards engaged: he caused and intended to cause losses totaling more than $500,000 while still on probation for a prior conviction of theft of six times as much! Sure, Edwards was forced to repay some of his ill-gotten gains, but he will not be subjected to the loss of liberty that accompanies a term of imprisonment. I agree with the Eleventh Circuit: some crimes require at least some time in prison — no probationary sentence will be sufficient. See Livesay, 587 F.3d at 1279. Edwards’s crimes fall into that category.
Sooner or later our circuit must come to the final question: how do we determine whether a sentence without incarceration is unreasonable? And if a sentence without incarceration is unreasonable, what term of incarceration is unreasonable? At times like this, one is tempted to reach for Justice Potter Stewart’s definition of pornography and apply it to determine whether a sentence is unreasonable: “I know it when I see it,” Jacobellis v. Ohio, 378 U.S. 184, 197, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964) (Stewart, J., concurring). Such a personalized and subjective norm does not sound like what an appellate court should be laying down as a rule to the district courts.
But can we do any better by attempting to spell out what constitutes “unreasonable” in the abstract? I think the Court, in Gall, wants us to try. In fact, Gall itself provided some guidance as to factors *1023 an appellate court should consider when it reviews the substantive reasonableness of a sentence. See 552 U.S. at 47-48, 128 S.Ct. 586. Additional factors to consider emerge from the decisions of our sister circuits and the reasoned opinions — both majority and dissenting — of our Court. Although no list of factors will be exhaustive and not all factors will be relevant in every case, we must provide guidance to the district courts so that we can minimize sentencing disparities even in the absence of mandatory guidelines.[8] See Whitehead, 532 F.3d at 999-1000 (Bybee, J., dissenting) (“As a circuit, we have an obligation to ensure roughly equal sentences both among our judicial districts and within each judicial district.”).
First, we should consider the quantitative and qualitative deviation of the sentence imposed from the sentence recommended by the now-advisory Guidelines. See Gall, 552 U.S. at 47-48. The quantitative deviation refers to the extent to which the sentence imposed is longer or shorter than the advisory Guidelines range. Id. at 41, 47, 128 S.Ct. 586 (“[T]he extent of the difference between a particular sentence and the recommended Guidelines range is surely relevant.”). The qualitative deviation refers to whether the type of sentence imposed (e.g., probation) differs from the type of sentence recommended by the Guidelines (e.g., incarceration). Id. at 48, 128 S.Ct. 586 (“We recognize that custodial sentences are qualitatively more severe than probationary sentences of equivalent terms.”). Here, the sentence imposed by the district court was a significant deviation — both quantitatively and qualitatively — from the recommended Guidelines sentence. The Guidelines range was twenty-seven to thirty-three months’ incarceration, but the district court imposed a probationary sentence of five years with no incarceration.
Second, we should consider whether the district court’s deviation from the advisory Guidelines range was based on circumstances already taken into account by the Guidelines. See Whitehead, 532 F.3d at 998-99 (Bybee, J., dissenting) (“The district court abused its discretion by completely reducing [the defendant’s] sentence based on a low likelihood of recidivism where the Guidelines calculation itself had already been reduced to reflect this factor.”). Here, the district court explained that a probationary sentence “was sufficient to protect the public from further crimes by the defendant.” However, Edwards’s likelihood of recidivism had already been considered in the calculation of his criminal history category. Edwards was not assigned the lowest criminal history category because he had committed bank fraud while on probation for a similar crime in Arizona. Based on Edwards’s track record, the Guidelines recommended a sentence of incarceration to protect the public from Edwards.
The district court made a directly contrary finding on the ground that there was not “a very good likelihood that [Edwards] would engage in this kind of business in the future.” The district court explained that the likelihood of recidivism was low because Edwards had committed bank fraud and bankruptcy fraud nine years earlier with no subsequent convictions; he had significant medical problems, including *1024 diabetes and neuropathy; and he left the construction industry, which “is what got him into the trouble in the first place.” Although we must give deference to the district court’s finding that the likelihood of recidivism was low, that finding cannot support the extent of the district court’s deviation from the sentence recommended by the Guidelines, particularly given that the Guidelines already took the likelihood of recidivism into account by not assigning Edwards a higher criminal history category.
Third, we should consider whether the mitigating factors relied on by the district court to reduce the sentence were unexceptional or “common to similarly situated offenders.” Omole, 523 F.3d at 698 (explaining that the defendant’s young age— twenty years old — was not a unique characteristic that would justify a sentence significantly below the Guidelines range); see Whitehead, 532 F.3d at 997-98 (Bybee, J., dissenting) (explaining that the fact the defendant had shared custody of his daughter was not an exceptional circumstance because “the mere imposition of hardship on family relationships ... necessarily accompanies the order of any prison sentence”). Here, the district court explained that a below-Guidelines sentence was warranted because the Guidelines range was based on Edwards’s intended loss, not the actual loss he caused. But it is unexceptional that the actual losses were less than the intended losses. I expect the amount the run-of-the-mill thief intends to steal is usually greater than the amount he actually steals. The fact that the losses attributed to Edwards were intended rather than actual simply reflects the fact that Edwards got caught. He should not benefit from that fact.
Fourth, we should consider whether the district court “base[d] the sentence on impermissible factors.” Hunt, 521 F.3d at 649 (holding that the district court abused its discretion when it imposed a below-Guidelines sentence, in part, because it disagreed with the jury’s finding that the defendant had the intent to defraud). Here, although the district court’s sentence was based on the § 3553(a) factors, it was based on an erroneous interpretation of § 3553(a)(2)(B). The district court concluded general deterrence was not an important factor, based on the conclusion that general deterrence is limited by the concept of the crook’s immediate community — a term nowhere to be found in the statute.
Fifth, we should consider whether the district court gave “too much weight” to a particular § 3553(a) factor. See Ressam, 593 F.3d at 1131 (“[I]t appears that the district court abused its discretion in weighing the relevant factors by giving too much weight to [the defendant’s] cooperation and not enough weight to the other relevant § 3553(a) factors, including the need to protect the public.”); United States v. Givens, 443 F.3d 642, 646 (8th Cir.2006) (vacating and' remanding a sentence as substantively unreasonable where the district court gave “too much weight” to the defendant’s “history and characteristics and showed a great deal of sympathy toward him” and gave “not enough [weight] to the other portions of section 3553(a)”). Here, the district court, like the district court in Givens, gave too much weight to Edwards’s history and characteristics and gave too little weight to general deterrence.
Edwards’s sentence was based on the district court’s clearly erroneous finding that general deterrence is not a significant factor in this case and the conclusion that the sentencing factor of general deterrence is somehow restricted only to the effect prison terms would have on Edwards’s community. If we ignore the district *1025 court’s finding there was general deterrence by a probationary sentence because of the vagueness of such finding, the district court’s application of § 3553(a) — and the imposition of a sentence that included no incarceration — was illogical and without support in inferences that may be drawn from the facts in the record. Although we must give deference to the district court’s finding that Edwards was not likely to commit a similar crime in the future, that finding does not justify the significant deviation from the Guidelines sentencing range. Because the district court abused its discretion when it imposed this substantively unreasonable sentence, I respectfully dissent.

. On a prior appeal of Edwards’s sentence to this Court, Judge Kleinfeld dissented from the majority's decision to remand Edwards’s sentence to the district court for possible resen-tencing in light of United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). Edwards, 158 Fed.Appx. at 932 (Kle-infeld, J., dissenting). Judge Kleinfeld would have vacated the sentence as substantively unreasonable and remanded for resentencing. Id.

. Section 3553(a)(2) lists factors a district court must consider when it decides whether to impose a sentence outside the Guidelines range. Section 3553(a)(2) requires the district court to consider
the need for the sentence imposed—
(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
*1019 (C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner....

. I agree with the majority that the district court did not err when it ordered restitution. I also agree that the district court committed no procedural error — substantive unreasona-bility not being "procedural” — when it sentenced Edwards.

. See, e.g., United States v. Livesay, 587 F.3d 1274, 1278-79 (11th Cir.2009) (holding that a sentence of five years' probation was unreasonably lenient where the defendant played a key role in an accounting fraud scheme that caused over $1 billion in losses to a company’s shareholders and the Guidelines range was seventy-eight to ninety-seven months’ imprisonment); United Stales v. Omole, 523 F.3d 691, 698-700 (7th Cir.2008) (holding that a sentence of twelve months' imprisonment was unreasonably lenient where the defendant engaged in wire fraud and caused $90,000 in losses and the Guidelines range was sixty-three to seventy-eight months’ imprisonment).

. Even outside the context of white collar crime, our circuit has only once since Gall held that a sentence is unreasonably lenient. See United States v. Ressam, 593 F.3d 1095, 1131 (9th Cir.2010).

. The one exception is our recent decision in Ressam, where we held unreasonably lenient a twenty-two year sentence for a terrorist who "was convicted by a jury on nine counts of criminal activity in connection with his plot to carry out an attack against the United States by detonating explosives at the Los Angeles International Airport ("LAX”) on the eve of the new Millennium, December 31, 1999.” Ressam, at 1099. The advisory Guidelines range in that case was sixty-five years to life in prison. Id.

. I agree that Edwards’s sentence had some deterrence effect in his communities: one hopes those in his communities have been deterred from dealing with Edwards. But the thieves among them have not been deterred from following in his footsteps.

. Trial courts are called on daily to determine what is "reasonable” in a variety of contexts. Discovery orders, extensions of time, bench trials in negligence cases, and review of damages awards — or determination of criminal sentences — are just some of the many such contexts. Where precedent has produced a practice, the task is easier. A practice develops settled expectations. We must begin to do the same in the context of reviewing sentences for substantive reasonableness.